Jerry L. Steering (SBN 122509)
Law Offices of Jerry Steering
4063 Birch Street, Suite 100
Newport Beach, California 92660
(949) 474-1849
(949) 474-1883 Fax
jerrysteering@yahoo.com
Attorney for Plaintiff Eduardo Lopez Gonzalez

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDUARDO LOPEZ GONZALEZ, <br><br> Plaintiff, <br><br> vs. <br><br> COUNTY OF LOS ANGELES, MARC ANTRIM, ERIC RODRIGUEZ (also known as "Rooster"), CHRISTOPHER MYUNG KIM, KEVIN McBRIDE, MATTHEW JAMES PEREZ (also known as "Neer"), DANIEL AGUILERA, JAY COLBY SANFORD (also known as "Monte Jay"), and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No.: <br><br> COMPLAINT FOR DAMAGES FOR VIOLATION OF FEDERAL CONSTITUTIONAL RIGHTS UNDER COLOR OF STATE LAW (42 U.S.C. § 1983) CLAIM FOR UNREASONABLE SEIZURE OF PERSON (U.S. CONST. AMEND 4); *MONELL* CLAIM AGAINST LOCAL GOVERNING BODY DEFENDANTS BASED ON OFFICIAL POLICY, PRACTICE OR CUSTOM <br><br><br><br><br><br> JURY TRIAL DEMANDED |

**COMES NOW** plaintiff EDUARDO LOPEZ GONZALEZ, and shows this honorable court the following:

COMPLAINT FOR DAMAGES

1

## JURISDICTIONAL ALLEGATIONS

1.      As this action is brought under 42 U.S.C. § 1983, this court has jurisdiction over this case under its federal question jurisdiction pursuant to 28 U.S.C. § 1331.

2.      As the incidents complained of in this action occurred in the County of Los Angeles, State of California, within the territorial jurisdiction of this court, venue properly lies in this court pursuant to 28 U.S.C. § 1391(b)(2).

## GENERAL ALLEGATIONS

3.      Plaintiff Eduardo Lopez Gonzalez, hereinafter referred to as "GONZALEZ" and/or "plaintiff" and/or "Eduardo Gonzalez" is a natural person, who, at all times complained of in this action, resided in the State of California.

4.      Defendant County of Los Angeles, hereinafter also referred to as "County of Los Angeles" or "COUNTY", is a political subdivision of the State of California and is a municipal entity, located within the territorial jurisdiction of this Honorable Court.

5.      Defendant Marc Antrim, hereinafter referred to as "ANTRIM", was a sworn peace officer and deputy sheriff / patrol officer with the Los Angeles County Sheriff's Department stationed out of the Temple Station in Temple City, California, who, at all times complained of in this action was acting as an individual person under the color of state law, and was acting in the course of and within the scope of his employment with the Los Angeles County Sheriff's Department and defendant County of Los Angeles. At all times complained of in this action, ANTRIM was acting in a joint, concerted and conspiratorial action with defendants Eric Rodriguez, Christopher Myung Kim, Kevin McBride, Matthew James Perez (also known as "Neer"), Daniel Aguilera, Jay Colby Sanford and the other named and unnamed doe defendants, identified hereinabove and hereinbelow.

COMPLAINT FOR DAMAGES

2

6.     Defendant Eric Rodriguez, also known as "Rooster," and hereinafter referred to as "RODRIGUEZ," is an individual person, who, at all times complained of in this action, was acting as an individual person acting under the color of state law in a joint, concerted and conspiratorial action with defendants ANTRIM, Christopher Myung Kim, Kevin McBride, Matthew James Perez (also known as "Neer"), Daniel Aguilera, Jay Colby Sanford and the other named and unnamed doe defendants, identified hereinabove and hereinbelow.

and the other named and unnamed DOE defendants, identified hereinbelow.

7.     Defendant Christopher Myung Kim, hereinafter referred to as "KIM," is an individual person, who, at all times complained of in this action, was acting as an individual person acting under the color of state law in a joint, concerted and conspiratorial action with defendants ANTRIM, RODRIGUEZ, Kevin McBride, Matthew James Perez (also known as "Neer"), Daniel Aguilera, Jay Colby Sanford and the other named and unnamed doe defendants, identified hereinabove and hereinbelow.

8.     Defendant Kevin McBride, hereinafter referred to as "McBRIDE," is an individual person, who, at all times complained of in this action, was acting as an individual person acting under the color of state law in a joint, concerted and conspiratorial action with defendants ANTRIM, KIM, RODRIGUEZ, McBRIDE, Matthew James Perez (also known as "Neer"), Daniel Aguilera, Jay Colby Sanford and the other named and unnamed doe defendants, identified hereinabove and hereinbelow.

9.     Defendant Matthew James Perez, also known as "Neer," and hereinafter referred to as "PEREZ," is an individual person, who, at all times complained of in this action, was acting as an individual person acting under the color of state law in a joint, concerted and conspiratorial action with defendants ANTRIM, KIM, RODRIGUEZ, McBRIDE, Daniel Aguilera, Jay Colby Sanford and the other named and unnamed doe defendants, identified hereinabove and

hereinbelow.

10.    Defendant Daniel Aguilera, hereinafter referred to as "AGUILERA," is an individual person, who, at all times complained of in this action, was acting as an individual person acting under the color of state law in a joint, concerted and conspiratorial action with defendants ANTRIM, KIM, RODRIGUEZ, McBRIDE, PEREZ, Jay Colby Sanford and the other named and unnamed doe defendants, identified hereinabove and hereinbelow.

11.    Defendant Jay Colby Sanford, also known as "Monte Jay" or "SANFORD", is an individual person, who, at all times complained of in this action, was acting as an individual person acting under the color of state law in a joint, concerted and conspiratorial action with defendants ANTRIM, KIM, RODRIGUEZ, McBRIDE, PEREZ, AGUILERA and the other named and unnamed doe defendants, identified hereinabove and hereinbelow.

12.    Defendants DOES 1 through 3, inclusive, are sworn peace officers and/or deputy sheriffs and/or supervisors and/or Investigators and/ Special Officers and/or a dispatchers and/or some other public officer, public official or employee of defendant County of Los Angeles and/or of some other public entity[1], who in some way committed some or all of the felonious / tortious actions and constitutional violations complained of in this action, and/or are otherwise responsible for and liable to plaintiff for the acts of the various parties and of others complained of in this action, whose identities are, and remain unknown to plaintiff, who will amend his complaint to add and to show the actual names of said DOE defendants when ascertained by plaintiff.

13.    At all times complained of herein, DOES 1 through 3, inclusive, were acting as individual persons acting under the color of state law, pursuant to their

---

[1] The identity of said entity(ies) also being presently unknown to plaintiff.

COMPLAINT FOR DAMAGES

4

authority as sworn peace officers and/or Deputy Sheriffs and/or Special Officers and/or Supervisors (i.e. Sergeants, Lieutenants, Captains, Commanders, etc.) and/or dispatchers and/or public officers, employed by defendant County of Los Angeles and/or of some other public entity[2], and were acting in the course of and within the scope of their employment with the County of Los Angeles and/or of some other public entity[3].

14.    Defendants DOES 4 through 6, inclusive, are individual persons, who, at all times complained of in this action, were acting as an individual persons acting under the color of state law in a joint, concerted and conspiratorial action with defendants ANTRIM, KIM, RODRIGUEZ, McBRIDE, PEREZ, AGUILERA and the other named and unnamed DOE defendants, identified and referenced hereinabove and hereinbelow.

15.    Defendants DOES 7 through 10, inclusive, are sworn peace officers and/or Supervisors and/or Commanders and/or Captains and/or Lieutenants and/or Sergeants and/or Detectives and/or other Supervisory personnel (such as) and/or policy making and/or final policy making officials, including the Sheriff, Undersheriff, Assistant Sheriffs, Commanders and other Supervisory personnel, employed by defendant County of Los Angeles and/or of some other public entity[4], who are in some substantial way liable and responsible for, or otherwise proximately caused and/or contributed to the occurrences complained of by plaintiffs in this action, such as 1) via supervisory liability (i.e. failure to properly supervise, improperly directing subordinate officers, approving actions of subordinate officers, including by supervisors' and policy makers' participation in and/or encourage of, or covering-up and/or otherwise promoting the growth of,

---

[2] The identity of said entity(ies) also being presently unknown to plaintiff.
[3] The identity of said entity(ies) also being presently unknown to plaintiff.
[4] The identity of said entity(ies) also being presently unknown to plaintiff.

COMPLAINT FOR DAMAGES

perpetuating the existence of, actual criminal gangs, cliques and other sub-groups within the Los Angeles County Sheriff's Department, [5] 2) via bystander liability

---

[5] See, *Thomas v. County of Los Angeles*, 978 F.2d 504 (9th Cir. 1992)(Vikings "gang" composed of Los Angeles Sheriff's Department ("LASD"), including recently imprisoned Undersheriff Paul Tanaka, unlawful killed, beat, shot, falsely arrested innocents); See also, Los Angeles Sheriff's Department "*The Kolts Report*", July 1992 (gangs and regular line deputies of Sheriff's Department commonly / routinely use excessive force upon and frame innocents) https://www.clearinghouse.net/chDocs/public/PN-CA-0001-0023.pdf ; See, *Reform and Oversight Efforts: Los Angeles County Sheriff's Department*, December 2018 (Los Angeles County Sheriff's Department has long had policy of using force and violence against civilians) http://file.lacounty.gov/SDSInter/bos/supdocs/133008.pdf , See also, *Report of the Citizens' Commission on Jail Violence,* September 2012, https://ccjv.lacounty.gov/wp-content/uploads/2012/09/CCJV-Executive-Summary.pdf ; See also, Los Angeles County Sheriff's Department 29th Semiannual Report, July 2010, *Obstruction Arrests at the LASD*; See also, See also, Los Angeles County Sheriff's Department 30th Semiannual Report, September 2011, *Deputy Involved Shootings; By the Numbers*; See also, Los Angeles County Sheriff's Department 10th Semiannual Report, February 1999 (Sheriff refuses to implement recommendations of Kolts Report and the violence against civilians continues by LASD); See, *"L.A. County supervisors challenge Sheriff Villanueva in court over deputy's reinstatement"* - Los Angeles Times https://www.latimes.com/local/lanow/la-me-county-lawsuit-villanueva-deputy-20190304-story.html ; Los Angeles County Civilian Oversight Commission, *"Secret Deputy Subgroups"*, October 16, 2019, https://coc.lacounty.gov/Our-Work/Secret-Deputy-Subgroups **,** (gangs and regular line deputies of Sheriff's Department commonly / routinely use excessive force upon and frame innocents); Los Angeles County Board of Supervisors, "Deputy subgroups who self-associate and self-identify have existed for decades within the Department and have names such as the "Little Devils," "Banditos," "Reapers," and often bear unique tattoos. The Citizens' Commission on Jail Violence (CCJV) reported that these cliques exhibit patterns of insubordination, aggressive behaviors and excessive force and found that the Departments tolerance of deputy cliques contributed to excessive use of force in the jails. The CCJV recommended that the Department should employ a rotation policy to protect against the development of cliques and discourage staff participation in these cliques. The CCJV further recommended that the Department should vigorously investigate and discipline off-duty misconduct as it relates to the actions of the deputy subgroups. CONCLUSION, The behavior of these deputy subgroups is abhorrent and unacceptable both in and outside of the workplace. Both the PD and DA investigate cases where the conduct of the law enforcement officer is considered criminal in nature or has an impact on court criminal proceedings." http://file.lacounty.gov/SDSInter/bos/bc/1058692_071819.B101278.SHFDeputySubgroup.bm.pdf . See also, *"Deputy alleges violent arrests help officers earn notoriety in LASD-based 'Executioners' gang,"* which can be found at: https://abc7.com/compton-deputy-gang-executioners-attacked-beating/7292673/ ; See also, *"Office of Inspector General County of Los Angeles, ANALYSIS OF THE CRIMINAL INVESTIGATION OF ALLEGED ASSAULT BY BANDITOS, October 2020"* which can be found at:

COMPLAINT FOR DAMAGES

(i.e. by supervisory personnel failing to intervene in and stop unlawful actions of their subordinates and/or other officers), and such as by otherwise creating and/or causing the creation of, and/or contributing to the creation of, the policies and/or practices and/or customs and/or usages of defendant County of Los Angeles for: 1) wrongfully / unlawfully / unconstitutionally arresting and detaining persons; 2) deliberately fabricating, including forging, search warrants and search warrant applications, unlawfully search and seize the persons, and their possessions and places of abode; 3) for routinely / habitually / institutionally / systematically lying / cheating / covering-up for their fellow deputy sheriff(s) or their subordinate deputy sheriff(s) and other officers felonious / tortious / unconstitutional actions against the public;  and 4) for fabricating / destroying / concealing / altering / withholding evidence in criminal and civil actions, and for otherwise "framing" persons in criminal actions, in order to falsely and maliciously, oppressively convict innocent persons, to protect them and other deputy sheriffs, public officers and supervisory personnel from civil, administrative and criminal liability.

16.     Plaintiff is presently unaware of the identities of DOES 1 through 10, inclusive, and will amend his complaint to add and to show the actual names of said DOE defendants, when ascertained by plaintiff.

17.     At all times complained of herein, DOES 7 through 10, inclusive, were acting were acting as individual persons acting under the color of state law, pursuant to their authority as Deputy Sheriffs and/or Sergeants, Lieutenants or other Supervisory Officers, including, and/or were policy making and/or final

---

https://oig.lacounty.gov/Portals/OIG/Reports/Review_Banditos_Investigation.pdf?ver=qKWrM Ze26J3u6iyZ1Sxd2g%3d%3d . See also, "*L.A. County supervisors to consider motion seeking options to remove Sheriff Villanueva*," which can be found at: https://www.latimes.com/california/story/2020-10-26/supervisors-motion-remove-sheriff-villanueva?fbclid=IwAR0-HQuCDhUjYIl4u0NKDU8CUIfVmEaxytwhUvirEKFdlf_Qfh4yHLKmdAw .

7

policy making officials, employed by defendant County of Los Angeles and/or by some other public entity, and/or some other public official(s) with defendant County of Los Angeles, and were acting in the course of and within the scope of their employment with defendant County of Los Angeles and/or with some other public entity.

18.     At all times complained of herein, defendants DOES 7 through 10, inclusive, were acting as individual persons under the color of state law; under and pursuant to their status and authority as peace officers and/or Supervisory peace officers (as described herein, above and below), and/or policy making peace officers with the County of Los Angeles and/or with some other public entity.

19.     Moreover, at all times complained of herein, defendants DOES 1 through 10, inclusive, were acting pursuant to, or otherwise contributed to the creation and maintenance of, the customs, policies, usages and practices of defendant County of Los Angeles, for, inter alia: 1) via supervisory liability (i.e. failure to properly supervise, improperly directing subordinate officers, approving actions of subordinate officers, including by supervisors' and policy makers' participation in and/or encourage of, or covering-up and/or otherwise promoting the growth of, perpetuating the existence of, actual criminal gangs, cliques and other sub-groups within the Los Angeles County Sheriff's Department, 2) via bystander liability (i.e. by supervisory personnel failing to intervene in and stop unlawful actions of their subordinates and/or other officers), and such as by otherwise creating and/or causing the creation of, and/or contributing to the creation of, the policies and/or practices and/or customs and/or usages of defendant County of Los Angeles for: 1) wrongfully / unlawfully / unconstitutionally arresting and detaining persons; 2) deliberately fabricating, including forging, search warrants and search warrant applications, unlawfully search and seize the persons, and their possessions and places of abode; 3) for routinely / habitually / institutionally / systematically lying / cheating / covering-

up for their fellow deputy sheriff(s) or their subordinate deputy sheriff(s) and other officers felonious / tortious / unconstitutional actions against the public;  and 4) for fabricating / destroying / concealing / altering / withholding evidence in criminal and civil actions, and for otherwise "framing" persons in criminal actions, in order to falsely and maliciously, oppressively convict innocent persons, to protect them and other deputy sheriffs, public officers and supervisory personnel from civil, administrative and criminal liability.

20.    In addition to the above and foregoing, defendants DOES 1 through 6, inclusive, acted pursuant to a conspiracy, agreement and understanding and common plan and scheme to deprive the plaintiff Eduardo Gonzalez of his federal and State Constitutional and statutory rights, as complained of below in this action, and acted in joint and concerted action to so deprive plaintiff of those rights as complained of herein; all in violation of 42 U.S.C. § 1983, and otherwise in violation of United States (Constitutional and statutory) law.

21.    Said conspiracy / agreement / understanding / plan / scheme / joint action / concerted action, above-referenced, was a proximate cause of the violation of the plaintiff Eduardo Gonzalez's federal and state constitutional and statutory rights, as complained of herein.

### FIRST CAUSE OF ACTION
### UNREASONABLE SEIZURE OF PERSON UNDER
### VIOLATION OF U.S. CONST. AMEND IV
### [42 U.S.C. § 1983]
### (By Plaintiff EDUARDO GONZALEZ, against Defendants ANTRIM, RODRIGUEZ, KIM, McBRIDE, PEREZ, AGUILERA, SANFORD and DOES 1 through 6, inclusive)

22.    Plaintiff hereby realleges and incorporate by reference the allegations set forth in paragraphs 1 through 21, inclusive, above, as if set forth in full herein.

23.    In the early morning hours on October 29, 2018 (at approximately 3:11 a.m.) plaintiff Eduardo Gonzalez was a security guard at a duly licensed

cannabis distributor and retailer storefront and distribution warehouse, located at 728 E. Commercial Street in Los Angeles, California for a company named "STIIIZY DTLA".

24.    While guarding STIIIZY DTLA, plaintiff noticed a Los Angeles a County Sheriff's Department Ford Explorer Police Interceptor SUV[6] pull in front of the locked gate. ANTRIM then stepped out of the Police Interceptor SUV and contacted plaintiff Eduardo Gonzalez from behind the locked gate.

25.    At the time of his arrival to the scene of the subject incident, defendant ANTRIM was dressed in his department-issued Los Angeles County Sheriff's Department ("LASD") "raid" uniform, wearing his department-issued Los Angeles County Sheriff's Department armored vest bearing the word "SHERIFF" on the front, a Los Angeles County Sheriff's Department badge, a long sleeved black shirt, jeans, and was brandishing his department-issued LASD service weapon / sidearm, among other department-issued items laden on his police duty belt (ammunition clips, radio, handcuffs, pepper spray, etc., as is customary for peace officers to wear while on duty and executing a search warrant).

26.    As defendant ANTRIM and DOES 1 through 3, inclusive, approached the locked security gate to the parking lot of said business, he/they showed a search warrant to plaintiff GONZALEZ. The "search warrant" showed that the place to be searched and seized as 728 E. Commercial Street, Los

---

[6] It was later determined that at the time of his arrival to the scene of the subject incident, defendant ANTRIM arrived in a Los Angeles County Sheriff's Department Ford Explorer Police Interceptor that had been assigned to him by a certain unknown Los Angeles Sheriff's Department deputy sheriff(s) and/or other Los Angeles County employee(s), DOE 1; and said Ford Explorer Police Interceptor SUV is registered to the Los Angeles County Sheriff's Department and is equipped with a police radio and Mobile Data Terminal ("MDT") laptop-style computer mounted to the center console, as is customary for patrol / police vehicles registered to the Los Angeles County Sheriff's Department.

Angeles, California.[7]

27. Defendant ANTRIM and DOES 1 through 3, inclusive, demanded that plaintiff GONZALEZ unlock the gate to allow defendant ANTRIM and DOES 1 through 3, inclusive, onto the subject business premises to execute the search warrant. At the time defendant ANTRIM and DOES 1 through 3, inclusive, displayed the search warrant, plaintiff was working with another security guard in the parking lot ("Security Guard #2"), who had the remote control to open the parking lot gate.

28. Thereafter, Security Guard #2 was compelled / forced by said defendants to open the locked security gate of the parking lot by the armed defendant ANTRIM and DOES 1 through 3, inclusive, and plaintiff GONZALEZ watched defendant ANTRIM and DOES 1 through 3, inclusive, drive the LASD Ford Explorer Police Interceptor SUV into the parking lot.

29. After parking the LASD Ford Explorer Police Interceptor in the parking lot, ANTRIM, McBRIDE and PEREZ and DOES 1 through 3, inclusive, then exited the vehicle.

30. Defendants McBRIDE and PEREZ are not LASD deputy sheriffs, but both McBRIDE and PEREZ were wearing LASD "raid" gear, consisting of green windbreakers with shoulder and chest patches with insignias identifying them as LASD deputy sheriffs, including embroidered badges, provided to them by ANTRIM and DOES 1 through 3, inclusive, or some other unidentified LASD deputy sheriff(s) and/or other unidentified Los Angeles County employee(s) and/or other unidentified individual person(s). As such, defendants McBRIDE,

---

[7] Plaintiff GONZALEZ later learned that the search warrant ANTRIM and DOES 1 through 3, inclusive, presented to him was entirely fabricated, false and forged, and the entire incident was an elaborate robbery / heist orchestrated by defendant KIM, a crime committed under the color of law by defendants ANTRIM, RODRIGUEZ, KIM, McBRIDE, PEREZ, AGUILERA, SANFORD and DOES 1 through 6, inclusive, as described herein.

PEREZ and DOES 1 through 6 inclusive, were acting under the color of state law when they conspired with defendants RODRIGUEZ, KIM, McBRIDE, PEREZ, AGUILERA, SANFORD and DOES 1 through 3, inclusive to impersonate armed on-duty LASD deputy sheriffs, when all defendants conspired to commit the constitutional violations against the plaintiff and others, as shown hereinbelow.

31.    Moreover, McBRIDE, PEREZ and DOES 1 through 4, inclusive, were also wearing police duty belts and were armed with holstered sidearms / pistols.

32.    Furthermore, defendants PEREZ and DOES 1 through 4, inclusive, appeared to be openly carrying a long gun, which resembled an assault rifle or shotgun.

33.    Thereafter, defendant ANTRIM and DOES 1 through 3, inclusive, unlawfully, unreasonably and intentionally searched plaintiff GONZALEZ and Security Guard #2 while defendants McBRIDE, PEREZ and DOES 3 through 5, inclusive, stood nearby, and thereafter took / confiscated / seized their cell phones.

34.    After searching and taking / confiscating / seizing their cell phones, defendant ANTRIM and DOES 1 through 3, inclusive, then unlawfully detained and arrested plaintiff GONZALEZ and Security Guard #2 by placing them into the back of the aforementioned LASD Ford Explorer Police Interceptor vehicle and imprisoning them there.

35.    Plaintiff GONZALEZ then observed defendants ANTRIM, McBRIDE, PEREZ and DOES 1 through 3, inclusive, walk across the parking lot and approach the front entrance to the retail storefront, where a third security officer (Security Guard #3) was standing guard inside the lobby of said business.

36.    At approximately 3:15 a.m., defendant ANTRIM and DOES 1 through 3, inclusive, then showed his LASD badge through the glass door and displayed the search warrant and demanded that Security Guard #3 open the door to the business, to which Security Guard #3 complied and opened the door,

allowing defendants ANTRIM, McBRIDE and PEREZ into the business.

37.     Defendant ANTRIM and DOES 1 through 3, inclusive, then unlawfully searched[8] Security Guard #3 and took / confiscated / seized her cell phone.

38.     Defendant ANTRIM and DOES 1 through 3, inclusive, then drove the LASD Ford Explorer Police Interceptor closer to the front door of the business, and placed Security Guard #3 in the back seat with plaintiff GONZALEZ and Security Guard #2.

39.      A few minutes later, at approximately 3:21 a.m., defendant AGUILERA and DOES 4 through 5, inclusive, arrived in a rented Penske box truck, and parked the truck near the front door of the business.

40.     Thereafter, defendants ANTRIM, McBRIDE, PEREZ and AGUILAR and DOES 4 through 5, inclusive, then proceeded to load the truck with boxes and bags of marijuana, while defendant SANFORD[9] was nearby serving as a lookout.

41.     However, during the course of the robbery / heist, an employee of the business had called police to alert / report the subject incident. The subject property is located within the jurisdiction of the City of Los Angeles and the Los Angeles Police Department ("LAPD").

42.     At approximately 3:43 a.m., in response to said phone call, approximately 8-10 LAPD police officers arrived at the scene of the robbery / heist.

43.     As LAPD police officers arrived at the scene, plaintiff GONZALEZ could hear defendant ANTRIM and DOES 1 through 4, inclusive, saying "Fuck!

---

[8] Security Guard #3 also lifted her shirt to show defendant ANTRIM that she was unarmed.
[9] It was later revealed through court documents that defendant SANFORD agreed to accept $10,000.00 for his role as a "lookout" during the subject robbery / heist.

COMPLAINT FOR DAMAGES

Fuck! Fuck!" because defendant ANTRIM and DOES 1 through 4, inclusive, did not anticipate interference with the robbery / heist by LAPD police officers when they responded to a legitimate call for service.

44. Moreover, when LAPD police officers arrived at the scene, defendants McBRIDE, PEREZ, AGUILAR and DOES 1 through 4, inclusive, fled out of the back door of the building, and McBRIDE, PEREZ and DOES 1 through 4, inclusive, were seen ditching / discarding their LASD windbreakers and police duty belts containing the weapons in order to avoid getting caught by the responding LAPD police officers during the robbery / heist.[10]

45. Thereafter, at approximately 3:50 a.m., defendant ANTRIM and DOES 1 through 4, inclusive, met with the responding LAPD police officers and displayed his LASD deputy sheriff badge, and falsely claimed he was a narcotics detective and conducting a legitimate search; something that was not true.

46. After a few minutes of discussion with the LAPD police officers, at approximately 3:53 a.m., defendant ANTRIM and DOES 1 through 4, inclusive, then entered the building and retrieved the discarded LASD windbreakers and duty belts and placed the items in the trunk of his LASD Ford Explorer Police Interceptor SUV.

47. At approximately 3:57 a.m., defendant ANTRIM and DOES 1 through 4, inclusive, then returned to the LAPD police officers at the scene.

48. The responding LAPD police officers then questioned ANTRIM and DOES 1 through 4, inclusive, about the validity and legitimacy of the search

---

[10] While plaintiff GONZALEZ did not personally witness defendants McBRIDE, PEREZ and AGUILAR flee and discard their police paraphernalia at the rear of the building from his vantage point being locked up in the back of a police vehicle, plaintiff GONZALEZ learned these facts after the robbery / heist due to the United States Attorney's Office review of the surveillance video of the robbery / heist and the subsequent criminal prosecution of the defendants. *See*, United States District Court, Central District of California Case Nos. 2:19-cr-00018-VAP (*U.S.A. v. Antrim, et al.*) and 2:19-cr-00166-VAP (*U.S.A. v. Kim, et al.*).

COMPLAINT FOR DAMAGES

14

warrant and its execution after being presented the fabricated and false search warrant in defendant ANTRIM's and DOES 1 through 6's, inclusive's, possession.[11]

49. At the time that defendant ANTRIM and the other defendants were conducting the subject robbery / heist, ANTRIM was not assigned to a narcotics unit, was not a detective, and would have no reason to investigate or execute a search warrant of the marijuana distribution warehouse.

50. After making several phone calls in the presence of the responding LAPD police officers, at approximately 4:12 a.m., defendant ANTRIM told the officers that his Los Angeles County Sheriff's Department Sergeant, identified herein as DOE 6, was on his cell phone.

51. At that time, defendant ANTRIM handed his cell phone to one of the responding LAPD police officers in the middle of a call, and defendant DOE 6[12] then spoke to a Los Angeles Police Department police officer and told him that defendant ANTRIM was legitimately conducting the execution of the forged search warrant in ANTRIM's official capacity as a Los Angeles County Sheriff's Department Deputy Sheriff.

52. However, LAPD body-cam footage shows that while an LAPD police officer was holding defendant ANTRIM's phone, an incoming call came into defendant ANTRIM's phone. When that call came in, a photograph of

---

[11] The legitimate call for service by an employee inside the building raised the suspicions of the responding LAPD police officers, because search warrants are typically executed by numerous peace officers and only after an operational plan is submitted to a supervisor for approval. Furthermore, defendant ANTRIM worked out of the Temple City station of the Los Angeles County Sheriff's Department, and the robbery / heist was committed in downtown Los Angeles, outside of the service area of the Temple City station.

[12] Plaintiff later discovered through court documents that defendant DOE 6 was not defendant ANTRIM's sergeant, but was another LASD deputy sheriff. Plaintiff will amend this complaint when the true name of defendant DOE 6 is ascertained by plaintiff.

COMPLAINT FOR DAMAGES

15

defendant McBRIDE appeared on defendant ANTRIM's phone. Said photograph on defendant ANTRIM's phone (as well as video images of the robbery / heist) was verified to be defendant McBRIDE by a special agent with the Bureau of Alcohol, Tobacco and Firearms who is familiar with defendant McBRIDE.

53.     Thereafter, defendant ANTRIM and DOE 6 successfully convinced the responding LAPD police officers that ANTRIM was conducting a lawful search, pursuant to a lawfully issued search warrant, and said LAPD police officers left the scene of the robbery / heist.

54.     At approximately 4:16 a.m., defendants ANTRIM and DOES 1 through 4, inclusive, continued to load bags of marijuana and other items into the back of the Penske box truck.

55.     Shortly thereafter, defendant McBRIDE then returned to the scene of the robbery / heist.

56.     At approximately 4:34 a.m., a Dodge Ram dually truck arrived, with defendant RODRIGUEZ as its driver, and another co-conspirator, defendant DOE 4.

57.     The next minute, at approximately 4:35 a.m., co-conspirator defendant DOE 4 went out of the back door to the warehouse to retrieve a LASD jacket and other items that were discarded into the bushes. Defendant DOE 4 then left the warehouse and returned a short while later.

58.     At approximately 4:50 a.m., ANTRIM, McBRIDE, RODRIGUEZ and DOE 4 then moved two large safes containing at least $615,000.00 in cash and approximately $15,000.00 in money orders, and all four men completed the robbery / heist.

59.     Plaintiff GONZALEZ heard one of the safes crash as it fell over from his position in the locked into the back of the aforementioned LASD Ford Explorer Police Interceptor as said defendants were loading the safe onto the aforementioned Penske box truck.

COMPLAINT FOR DAMAGES
16

60.     At approximately 4:56 a.m., defendants McBRIDE, RODRIGUEZ and DOE 4 then drove the Dodge Ram dually truck and the Penske box truck away from the scene of the robbery / heist and absconded with at least 1,200 pounds of marijuana and at least $615,000.00 in cash and approximately $15,000.00 in money orders.

61.     Shortly thereafter, defendant ANTRIM and DOES 1 through 3, inclusive, then released plaintiff GONZALEZ, Security Guard #2 and Security Guard #3 from their unlawful and unreasonable detention and arrest, and returned their cell phones to them.

62.     Defendant ANTRIM and DOES 1 through 3, inclusive, told the three security guards not to go anywhere, because "they were going to hit some other locations," and they would be back to question them.

63.     It was later made known to plaintiff GONZALEZ that defendant ANTRIM and DOES 1 through 3, inclusive, was/were not executing a lawful search warrant, and was criminally prosecuted, along with defendants McBRIDE and RODRIGUEZ.[13]

64.     Hours after the robbery, defendant ANTRIM and DOES 1 through 3, inclusive, drove the rented Penske box truck to a storage space located in Walnut, California, which had been rented by KIM, where ANTRIM, McBRIDE and other co-conspirators including DOES 1 through 5, inclusive, unloaded the stolen marijuana and marijuana products into said storage space.

65.     Moreover, on October 29, 2018, the day after the robbery / heist, GPS records revealed that the rented Penske box truck was also at the residence of defendant McBRIDE.

66.     Plaintiff GONZALEZ later discovered that a few weeks prior to the

---

[13] *See*, Unites States District Court, Central District Case No. 2:19-cr-00018-VAP (*U.S.A v. Marc Antrim, Kevin McBride and Eric Rodriguez*).

COMPLAINT FOR DAMAGES

subject robbery / heist, defendant KIM was accused of stealing from his employers and was fired from the marijuana distribution warehouse after years of employment, and he was a bitterly disgruntled former employee.

67.     Although defendant KIM was not at the warehouse during the robbery / heist, defendant KIM was determined to retaliate against his former employers, and teamed up with defendant ANTRIM and DOES 1 through 6, inclusive, to orchestrate the robbery / heist under the color of law and stood to profit from it.

68.     More specifically, defendant KIM provided defendant ANTRIM and DOES 1 through 6, inclusive, with information about the warehouse's layout, operation, security, and included blueprints to the warehouse, noting where security guards (such as plaintiff GONZALEZ) would be stationed. Defendant KIM also provided information as to which rooms should be "hit" to ensure the most valuable items were stolen.

69.     The following day, on or about October 30, 2018, defendant KIM and other co-conspirators took the marijuana and marijuana products and loaded them into defendant KIM's vehicle, another vehicle and rented U-Haul truck.

70.     Defendant KIM's role in the robbery / heist was to profit from it by selling the marijuana and marijuana products to his business contacts within the cannabis industry.[14]

71.     Thereafter, on or about November 2, 2018, the owners of the marijuana distribution warehouse reviewed the video recordings of the robbery / heist, and took the video footage to their lawyer, who then contacted the Internal

---

[14] Plaintiff GONZALEZ later learned through court documents that when interviewed by federal agents, defendant KIM falsely claimed that defendant ANTRIM told KIM that he knew of illegality at the marijuana warehouse, and if KIM did not provide information and assist in the investigation about the location of the marijuana, cash, money orders and other valuable items in the warehouse, ANTRIM would implicate KIM into the investigation.

COMPLAINT FOR DAMAGES

18

Criminal Investigations Bureau of the Los Angeles County Sheriff's Department. The subsequent criminal investigation of the subject robbery / heist was undertaken by agents with the United States Drug Enforcement Agency ("DEA"), the Federal Bureau of Investigation ("FBI") and the Bureau of Alcohol, Tobacco and Firearms ("ATF").

72.     Unbeknownst to the defendants, the rented Penske box truck was equipped with a GPS device which placed the vehicle at the robbery / heist on October 29, 2018, and the GPS device identified other locations, which led DEA agents to some of the individual defendants' locations.

73.     On November 3, 2018, just five days after the robbery, defendant McBRIDE texted defendant ANTRIM. Defendant McBRIDE said (texted), "Sorry my exact total was 245,800 and some change lol." Defendant McBRIDE then said, "I'm giving Neer 30 Monte jay 10 and Daniel 5." Defendant McBRIDE was telling defendant ANTRIM that he netted approximately $245,800.00 from the robbery and intended to pay defendant PEREZ ("Neer") $30,000, defendant SANFORD ("Monte jay") $10,000.00, and defendant AGUILERA $5,000.00 for their assistance with the robbery.

74.     On November 5, 2018, DEA and/or FBI and/or ATF agents conducted surveillance on defendant ANTRIM and saw one of the stolen safes being loaded onto the Dodge Ram "dually" truck belonging to defendant RODRIGUEZ at the residence of McBRIDE. Agents also saw defendant ANTRIM remove boxes from the McBRIDE residence and loading them into another vehicle.

75.     On November 5, 2018, United States Magistrate Judge Alka Sagar of the United States District Court for the Central District of California signed a search warrant authorizing the disclosure of historical and prospective cell site information, GPS information, and the use of a cell site simulator for two phones, including one believed to belong to defendant RODRIGUEZ.

COMPLAINT FOR DAMAGES

19

76.     On November 5, 2018, United States Magistrate Judge Maria A. Audero of the United States District Court for the Central District of California signed a search warrant authorizing the disclosure of historical and prospective cell site information, GPS information, and the use of a cell site simulator for the phone belonging to defendant ANTRIM.

77.     On November 6, 2018, the DEA began receiving data pursuant to the search warrant, which led them to defendant RODRIGUEZ'S residence.

78.     Thereafter, federal agents also executed search warrants upon two of defendant ANTRIM's lockers at the LASD Temple City station.

79.     On November 7, 2018, a criminal complaint was filed against defendants ANTRIM and RODRIGUEZ by DEA special agent Andrew Truong, approved by United States Magistrate Judge Edward A. Infante, and both defendants were charged with a violation of 21 U.S.C. § 846, Conspiracy to Distribute Controlled Substances.

80.     On November 7, 2018, the government requested the detention of both defendants ANTRIM and RODRIGUEZ.

81.     On November 7, 2018, the Honorable United States Magistrate Judge Edward A. Infante of the United States District Court for the Central District of California signed a search warrant authorizing the search of the residence of defendant McBRIDE.

82.     On November 7, 2018, the Honorable United States Magistrate Judge Edward A. Infante of the United States District Court for the Central District of California signed a search warrant authorizing the search of the residence of defendant ANTRIM.

83.     On November 8, 2018, search warrants were executed at the residences of ANTRIM, McBRIDE and RODRIGUEZ, and those defendants were placed under arrest.

84.     On November 8, 2018, federal agents of the DEA and/or FBI and/or

ATF executed a search warrant and searched the residence of defendant McBRIDE and seized approximately $192,765.00 in cash, a loaded 9mm Beretta pistol that is/was registered to defendant ANTRIM, a metal patrol type flashlight with the word "ANTRIM" etched into it, and 455 grams of marijuana bearing bar codes from the California Department of Food & Agriculture's "Track and Trace" system packaged for retail distribution.

85.     On November 8, 2018, federal agents of the DEA and/or FBI and/or ATF executed a search warrant and searched the residence of defendant ANTRIM and seized approximately $193,127.05 in cash inside a blue duffel bag in defendant ANTRIM's bedroom, one .380 caliber MAC-10 firearm, which is a submachine gun-style firearm, one .45 caliber Thompson submachine gun style firearm, one 12 gauge double-barrel shotgun, one revolver, and various calibers of ammunition.

86.     On November 8, 2018, federal agents of the DEA and/or FBI and/or ATF executed a search warrant and searched the residence of defendant RODRIGUEZ and seized marijuana and marijuana products that appeared to have been packaged for commercial distribution, two firearms, a taser, and ammunition.

87.     On November 9, 2018, a criminal complaint was filed against defendant McBRIDE by DEA Special Agent Andrew Truong, approved by United States Magistrate Judge Alka Sagar, and defendant McBride was charged with a violation of 21 U.S.C. § 846; Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances.

88.     On December 18, 2018, United States Magistrate Judge Maria A. Audero of the United States District Court for the Central District of California, signed a search warrant authorizing the disclosure of historical and prospective cell site information, GPS information, and the use of a cell site simulator for the phone belonging to defendant PEREZ.

89.     On December 18, 2018, United States Magistrate Judge Maria A.

Audero of the United States District Court for the Central District of California signed a search warrant authorizing the disclosure of historical and prospective cell site information, GPS information, and the use of a cell site simulator for the phone belonging to defendant AGUILAR.

90. On January 11, 2019, United States Attorney for the Central District of California, Nicola T. Hanna, filed an Information against defendant ANTRIM, alleging violations of: (1) 21 U.S.C. § 846: Conspiracy to Distribute and Possess with Intent to Distribute Marijuana; (2) 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vii): Possession with Intent to Distribute Marijuana; (3) 18 U.S.C. § 241: Conspiracy Against Rights; (4) 18 U.S.C. § 242: Deprivation of Rights Under Color of Law; (5) 18 U.S.C. §§ 924(c)(1)(A)(i), (ii): Using, Carrying, and Brandishing a Firearm During and in Relation to, and Possessing a Firearm in Furtherance of, Drug Trafficking Crimes; 18 U.S.C. § 2(a): Aiding and Abetting; and 21 U.S.C. § 853, 18 U.S.C. § 924(d)(1)1 28 U.S.C. § 2461(c): Criminal Forfeiture.

91. On January 11, 2019, United States Attorney for the Central District of California Nicola T. Hanna filed the Information against defendant McBRIDE, alleging violations of: (1) 21 U.S.C. § 846: Conspiracy to Distribute and Possess with Intent to Distribute Marijuana; (2) 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vii): Possession with Intent to Distribute Marijuana; (3) 18 U.S.C. § 241: Conspiracy Against Rights; (4) 18 U.S.C. § 242: Deprivation of Rights Under Color of Law; (5) 18 U.S.C. §§ 924(c)(1)(A)(i), (ii): Using, Carrying, and Brandishing a Firearm During and in Relation to, and Possessing a Firearm in Furtherance of, Drug Trafficking Crimes; 18 U.S.C. § 2(a): Aiding and Abetting; and 21 U.S.C. § 853, 18 U.S.C. § 924(d)(1)1 28 U.S.C. § 2461(c): Criminal Forfeiture.

92. On January 11, 2019, United States Attorney for the Central District of California Nicola T. Hanna filed the Information against defendant RODRIGUEZ, alleging violations of: (1) 21 U.S.C. § 846: Conspiracy to Distribute and Possess with Intent to Distribute Marijuana; (2) 21 U.S.C. §§

841(a)(1), (b)(1)(B)(vii): Possession with Intent to Distribute Marijuana; (3) 18 U.S.C. § 241: Conspiracy Against Rights; (4) 18 U.S.C. § 242: Deprivation of Rights Under Color of Law; (5) 18 U.S.C. §§ 924(c)(1)(A)(i), (ii): Using, Carrying, and Brandishing a Firearm During and in Relation to, and Possessing a Firearm in Furtherance of, Drug Trafficking Crimes; and (6) 18 U.S.C. § 922(g)(1): Felon in Possession of a Firearm; 18 U.S.C. § 2(a): Aiding and Abetting; and 21 U.S.C. § 853, 18 U.S.C. § 924(d)(1)1 28 U.S.C. § 2461(c): Criminal Forfeiture; 18 U.S.C. § 2(a): Aiding and Abetting; and 21 U.S.C. § 853, 18 U.S.C. § 924(d)(1)1 28 U.S.C. § 2461(c): Criminal Forfeiture.

93. On January 15, 2019, defendants ANTRIM, RODRIGUEZ and McBRIDE filed waivers of indictment, and all three defendants were arraigned. The United States District Court for the Central District Case No. 2:19-cr-00018 was then assigned to the United States District Judge Virginia A. Phillips.

94. On January 25, 2019, the government filed a plea agreement as to defendant RODRIGUEZ.

95. On January 31, 2019, United States Magistrate Judge Paul L. Abrams of the United States District Court for the Central District of California signed a second search warrant authorizing the disclosure of historical and prospective cell site information, GPS information, and the use of a cell site simulator for the phone belonging to defendant AGUILAR.

96. On February 19, 2019, a criminal complaint was filed against defendants PEREZ, AGUILERA and SANFORD by FBI Special Agent LaNard Taylor, approved by United States Magistrate Judge Suzanne H. Segal, and the defendants were charged with a violation of 21 U.S.C. § 846, Conspiracy to Distribute Controlled Substances.

97. On February 19, 2019, United States Magistrate Judge Suzanne H. Segal issued an arrest warrant for defendant SANFORD.

98. On February 19, 2019, the government filed a request for detention of

defendants PEREZ, AGUILERA and SANFORD.

99.   On February 21, 2019, defendants PEREZ, AGUILERA and SANFORD were arrested.

100.   On March 4, 2019, defendant ANTRIM pleaded guilty to all five Counts of the Information, and defendant RODRIGUEZ pleaded guilty to Counts 1, 2 and 6 of the Information.

101.   On March 13, 2019, defendant McBRIDE pleaded guilty to all five Counts of the Information.

102.   On March 19, 2019, an arrest warrant was issued for defendant KIM.

103.   On March 19, 2019, defendants KIM, PEREZ, AGUILAR and SANFORD were indicted by a grand jury for violations of: (1) 21 U.S.C. § 846, Conspiracy to Distribute and Possess with Intent to Distribute Marijuana; (2) 21 U.S.C. §§ 841 (a)(1), (b)(1)(B)(vii ), Possession with Intent to Distribute Marijuana; (3) 21 U.S.C. §§ 841 (a)(1), (b)(1)(C), Possession with Intent to Distribute Cocaine; (4) 18 U. S .C . § 241, Conspiracy Against Rights; 18 U.S.C. § 242, Deprivation of Rights Under Color of Law; (5) 18 U.S.C. §§ 924(c)(l)(A)(i), (ii), Using, Carrying, and Brandishing a Firearm During and in Relation to, and Possessing a Firearm in Furtherance of, Drug Trafficking Crimes; and (6) 18 U.S.C. § 2 (a), Aiding and Abetting.

104.   On March 21, 2019, defendant KIM was arrested.

105.   On May 3, 2019, defendant SANFORD pleaded guilty to a violation of 21 U.S.C. § 846, Conspiracy to Distribute and Possess with Intent to Distribute Marijuana.

106.   On May 7, 2019, defendant AGUILERA pleaded guilty to a violation of 21 U.S.C. § 846, Conspiracy to Distribute and Possess with Intent to Distribute Marijuana.

107.   On May 7, 2019, defendant PEREZ pleaded guilty to a violation of (1) 21 U.S.C. § 846, Conspiracy to Distribute and Possess with Intent to Distribute

Marijuana; (2) 21 U.S.C. §§ 841 (a) (1), (b) (1) (B) (vii ): Possession with Intent to Distribute Marijuana; (3) 18 U.S.C. § 241, Conspiracy Against Rights; and (4) 18 U.S.C. § 242, Deprivation of Rights Under Color of Law.

108.    On November, 19, 20, 21 and 22, 2019, a jury trial was held for defendant KIM.

109.    On November 22, 2019, defendant KIM was found guilty by a jury of violations of (1) 21 U.S.C. § 846, Conspiracy to Distribute and Possess with Intent to Distribute Marijuana; (2) 21 U.S.C. §§ 841 (a) (1), (b) (1) (B) (vii ): Possession with Intent to Distribute Marijuana; (3) 18 U.S.C. § 241, Conspiracy Against Rights; (4) 18 U.S.C. § 242, Deprivation of Rights Under Color of Law; and (5) U.S.C. §§ 924(c)(l)(A)(i), (ii), Using, Carrying, and Brandishing a Firearm During and in Relation to, and Possessing a Firearm in Furtherance of, Drug Trafficking Crimes.

110.    On March 16, 2020, judgment and commitment to the federal Bureau of Prisons was entered against defendant McBRIDE for a term of 72 months.

111.    On April 13, 2020, a judgment and commitment to the custody of the federal Bureau of Prisons for 168 months was imposed upon defendant KIM.

112.    On June 16, 2020, a judgment and commitment to five years' probation was imposed upon defendant SANFORD.

113.    On July 10, 2020, a judgment and commitment to the custody of the federal Bureau of Prisons for 110 months was imposed upon defendant RODRIGUEZ.

114.    On July 22, 2020, a judgment and commitment to the custody of the federal Bureau of Prisons for 72 months was imposed upon defendant PEREZ.

115.    On October 20, 2020, defendant AGUILERA was sentenced to 24 months in federal prison.

116.    As of the filing of the instant matter, defendant ANTRIM has not been sentenced for his part in the robbery / heist.

COMPLAINT FOR DAMAGES

117.   The actions of defendants ANTRIM, RODRIGUEZ, KIM, McBRIDE, PEREZ, AGUILERA, SANFORD and DOES 1 through 10, inclusive, as complained above herein, constituted a violation of plaintiff Eduardo Gonzalez's rights under the Fourth Amendment to the United States Constitution to be free from an unlawful and unreasonable seizure of his person, in violation of the Fourth Amendment to the United States Constitution.

118.   As a direct and proximate result of the actions of defendants ANTRIM, RODRIGUEZ, KIM, McBRIDE, PEREZ, AGUILERA, SANFORD and DOES 1 through 10, inclusive, plaintiff Eduardo Gonzalez was: 1) substantially physically, mentally and emotionally injured, 2) incurred other special and general damages and expenses associated costs; all in an amount to be proven at trial which is in excess of $3,000.000.00.

119.   The actions of said defendants, and each of them, as complained of herein, were committed maliciously, oppressively and in reckless disregard of plaintiff GONZALEZ's constitutional rights, sufficient for an award of punitive / exemplary damages against said defendants, in an amount to be proven at trial, in excess of $3,000,000.00.

## SECOND CAUSE OF ACTION
### Claim Against Local Governing Body Defendants Based On Official Policy, Practice, Or Custom
### (By Plaintiff EDUARDO GONZALEZ, Against Defendants COUNTY and DOES 7 through 10, inclusive)

120.   Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 119, inclusive, above, as if set forth in full herein.

121.   As shown above, the actions of defendants ANTRIM, RODRIGUEZ, KIM, McBRIDE, PEREZ, AGUILERA, SANFORD and DOES 1 through 10, inclusive, deprived the plaintiff Eduardo Gonzalez of his particular rights under the United States Constitution and under the California Constitution, as described

above.

122.   At all times complained of herein, defendant ANTRIM, was acting pursuant to the policies, customs, usages and practices of the Los Angeles County Sheriff's Department for: 1) wrongfully / unlawfully / unconstitutionally arresting and detaining persons; 2) deliberately fabricating, including forging, search warrants and search warrant applications, 3) unlawfully searching and seizing the persons, and their possessions and places of abode; 4) for routinely / habitually / institutionally / systematically lying, cheating and covering-up for their fellow deputy sheriff(s) and/or their subordinate deputy sheriff(s) and/or other officers' felonious / tortious / unconstitutional actions against the public[15], and 5) for

---

[15]See, *Thomas v. County of Los Angeles*, 978 F.2d 504 (9th Cir. 1992)(Vikings "gang" composed of Los Angeles Sheriff's Department ("LASD"), including recently imprisoned Undersheriff Paul Tanaka, unlawful killed, beat, shot, falsely arrested innocents); See also, Los Angeles Sheriff's Department "*The Kolts Report*", July 1992 (gangs and regular line deputies of Sheriff's Department commonly / routinely use excessive force upon and frame innocents) ; See, *Reform and Oversight Efforts: Los Angeles County Sheriff's Department*, December 2018 (Los Angeles County Sheriff's Department has long had policy of using force and violence against civilians) http://file.lacounty.gov/SDSInter/bos/supdocs/133008.pdf , See also, *Report of the Citizens' Commission on Jail Violence,* September 2012, https://ccjv.lacounty.gov/wp-content/uploads/2012/09/CCJV-Executive-Summary.pdf ; See also, Los Angeles County Sheriff's Department 29th Semiannual Report, July 2010, *Obstruction Arrests at the LASD*; See also, See also, Los Angeles County Sheriff's Department 30th Semiannual Report, September 2011, *Deputy Involved Shootings; By the Numbers*; See also, Los Angeles County Sheriff's Department 10th Semiannual Report, February 1999 (Sheriff refuses to implement recommendations of Kolts Report and the violence against civilians continues by LASD); See, *"L.A. County supervisors challenge Sheriff Villanueva in court over deputy's reinstatement"* - Los Angeles Times ; Los Angeles County Civilian Oversight Commission, *"Secret Deputy Subgroups"*, October 16, 2019, https://coc.lacounty.gov/Our-Work/Secret-Deputy-Subgroups **,** (gangs and regular line deputies of Sheriff's Department commonly / routinely use excessive force upon and frame innocents); Los Angeles County Board of Supervisors, "Deputy subgroups who self-associate and self-identify have existed for decades within the Department and have names such as the "Little Devils," "Banditos," "Reapers," and often bear unique tattoos. The Citizens' Commission on Jail Violence (CCJV) reported that these cliques exhibit patterns of insubordination, aggressive behaviors and excessive force and found that the Departments tolerance of deputy cliques contributed to excessive use of force in the jails. The CCJV recommended that the Department should employ a rotation policy to protect against the development of cliques and discourage staff participation in these cliques. The CCJV further

fabricating / destroying / concealing / altering / withholding evidence in criminal and civil actions, and for otherwise "framing" persons in criminal actions, in order to falsely and maliciously, oppressively convict innocent persons, to protect them and other deputy sheriffs, public officers and supervisory personnel from civil, administrative and criminal liability

123.    Said actions of said defendants were done by them under the color of state law.

124.    As a proximate result of said defendants acting pursuant to said policies, customs, usages and practices of defendant COUNTY and DOES 7 through 10, inclusive, above-described, defendants committed said actions complained of above.

125.    As a direct and proximate result of the actions of defendant COUNTY and DOES 7 through 10, inclusive, as complained of herein, also caused plaintiff Eduardo Gonzalez, to suffer substantial general damages, mental and emotional pain, suffering and distress; all in an amount to be shown at trial, in

---

recommended that the Department should vigorously investigate and discipline off-duty misconduct as it relates to the actions of the deputy subgroups. CONCLUSION, The behavior of these deputy subgroups is abhorrent and unacceptable both in and outside of the workplace. Both the PD and DA investigate cases where the conduct of the law enforcement officer is considered criminal in nature or has an impact on court criminal proceedings." http://file.lacounty.gov/SDSInter/bos/bc/1058692_071819.B101278.SHFDeputySubgroup.bm.pdf . See also, "*Deputy alleges violent arrests help officers earn notoriety in LASD-based 'Executioners' gang,*" which can be found at: https://abc7.com/compton-deputy-gang-executioners-attacked-beating/7292673/ ; See also, "*Office of Inspector General County of Los Angeles, ANALYSIS OF THE CRIMINAL INVESTIGATION OF ALLEGED ASSAULT BY BANDITOS, October 2020*" which can be found at: https://oig.lacounty.gov/Portals/OIG/Reports/Review_Banditos_Investigation.pdf?ver=qKWrMZe26J3u6iyZ1Sxd2g%3d%3d . See also, "*L.A. County supervisors to consider motion seeking options to remove Sheriff Villanueva,*" which can be found at: https://www.latimes.com/california/story/2020-10-26/supervisors-motion-remove-sheriff-villanueva?fbclid=IwAR0-HQuCDhUjYIl4u0NKDU8CUIfVmEaxytwhUvirEKFdlf_Qfh4yHLKmdAw .

excessive of $3,000,000.00.

**WHEREFORE**, plaintiff prays for judgment as follows:

a)      For a judgment against all defendants for compensatory damages in an amount in excess of $3,000,000.00;

b)      For a judgment against all defendants for punitive damages in an amount in excess of $3,000,000.00;

c)      For an award of reasonable attorney's fees and costs;

d)      For a trial by jury; and

e)      For such other and further relief as this honorable court deems just and equitable.

_____
JERRY L. STEERING, ATTORNEY FOR
PLAINTIFF EDUARDO GONZALEZ

COMPLAINT FOR DAMAGES
29